833 F.2d 1013
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SAGINAW MINING COMPANY, Petitioner,
v.
Chester WITHROW; Director, Office of Workers' Compensation
Programs, United States Department of Labor; and
Benefits Review Board, Respondents.
 No. 87-3048.
 United States Court of Appeals, Sixth Circuit.
 Nov. 30, 1987.
 
 Before MERRITT and ALAN E. NORRIS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 In this black lung appeal from a decision of the Benefits Review Board affirming an award of benefits, the primary issue is whether the Administrative Law Judge erred by failing to make findings of fact necessary to invoke the interim presumption of 20 C.F.R. 727.203(a). We find that the ALJ failed to resolve a factual dispute necessary to the invocation of the presumption, and we remand the case for more findings of fact.
 
 
 2
 Respondent Chester Withrow first applied for black lung benefits in June 1978. On December 1, 1981, a hearing was held before an ALJ. In a decision and order dated April 21, 1982, the ALJ denied Withrow benefits for the period prior to October 1981, but awarded benefits commencing at that time. On June 15, 1982, the ALJ issued a decision on motion for reconsideration which affirmed his April 21 decision and order. Petitioner Saginaw Mining Company appealed to the Benefits Review Board. On December 19, 1986, the Board issued a decision and order affirming the decision of the ALJ. This appeal followed.
 
 
 3
 Withrow was born on September 15, 1915 and has had at least 34 years of coal mine employment. His principal job was as a shuttle car operator, which involved driving loads of coal away from the mine or equipment to the mine. He also had to perform some more strenuous duties such as shoveling, hauling posts, dragging cable, moving pieces of equipment, and rock dusting. Withrow's work involved extensive exposure to coal dust. Withrow retired at the age of 61 in June 1978. He testified that he left his job because he had reached a point where he had to take oxygen pills and other medicine in order to keep going. He testified that after his retirement, he has had trouble breathing when climbing hills and that his breathing problem sometimes causes him to wake up at night.
 
 
 4
 The ALJ invoked the interim presumption under 20 C.F.R. Sec. 727.203(a)(2), which allows the invocation of the interim presumption on the basis of the results of ventilatory studies. The ALJ held that pulmonary function tests conducted on October 19, 1981 established the presence of chronic respiratory or pulmonary disease. 20 C.F.R. Sec. 718.103 establishes standards for pulmonary function tests. All pulmonary function test results are to be accompanied by three tracings of each test performed. Under section (a)(2), pulmonary function values below a certain level are sufficient to invoke the presumption. For a claimant of Withrow's height, the values are as follows:
 
 
 5
 (1) forced expiratory volume in one second (FEV1 ): 2.3 liters;
 
 
 6
 (2) maximum voluntary ventilation (MVV): 92 liters per minute.
 
 
 7
 Dr. J.J. Del Vecchio conducted the October 1981 pulmonary function tests and obtained an FEV1 result of 2.15 liters and an MVV of 60 liters per minute.
 
 
 8
 Dr. G.O. Kress examined the results of the pulmonary function tests conducted by Dr. Del Vecchio. In a letter, Dr. Kress stated:
 
 
 9
 I have looked at the pulmonary function tracings from Dr. Del Vecchio's examination. As I calculate his tracings, only one of the forced vital capacity curves being acceptable, I think he showed a vital capacity of 3 liters, 87% of predicted and an FEV1 of 2.15 liters, which makes a FEV /FVC ratio of 70%. His MVV is 96 liters per minute, which is normal. The failure to have at least two of the Forced Vital Capacity curves showing uniform results generally invalidates the study. Again, however, it is my opinion that this study does not demonstrate any significant ventilatory impairment.
 
 
 10
 The ALJ held that the evidence was sufficient to invoke the presumption. He stated that Dr. Kress apparently misread the test results to obtain an MVV value of 96.
 
 
 11
 On a motion for reconsideration to the ALJ, Saginaw argued that Dr. Kress had recalculated the tracings to obtain his results, thus putting into question the validity of the test. In his decision on the motion for reconsideration, the ALJ stated that "no finding is made as to whether the evidence justifies a conclusion that Dr. Kress did in fact obtain his MVV reading by a calculation from the tracings."
 
 
 12
 Saginaw argues that Dr. Kress' letter puts into question the validity of the evidence which was considered sufficient to invoke the interim presumption. Specifically, Saginaw argues that a factual question has been raised as to whether the MVV was calculated correctly and whether there were sufficient and adequate FEV1 attempts. The ALJ explicitly stated that he made "no finding" regarding the MVV result and he did not address the issue of why only one FEV1 tracing was deemed adequate by Dr. Kress when the regulations call for three.
 
 
 13
 We find Saginaw's argument to be persuasive. Despite the fact that Dr. Kress' letter is ambiguous, it raises a factual question which the ALJ should have resolved. We therefore remand this case to the Benefits Review Board and instruct the Board to remand the case to the ALJ in order for him to make appropriate findings of fact.
 
 
 14
 Two issues were raised on appeal which, in light of our decision, need not be addressed. Saginaw has raised the issue of whether the ALJ considered all relevant evidence for purposes of rebutting the interim presumption. Because we find that the ALJ should not have invoked the presumption at all without making further findings of fact, we need not address the issue of whether the presumption was rebutted below. After proper findings of fact are made, if the interim presumption is invoked, the ALJ should consider all relevant medical evidence in deciding whether the presumption is rebutted. See York v. Benefits Review Board, 819 F.2d 134 (6th Cir.1987).
 
 
 15
 Finally, Saginaw also raised the issue of whether the interim presumption can be invoked under 727.203(a)(4) on the basis of a single physician's report. The ALJ, following what was standard Board practice at the time of the hearing in 1983, stated that the presumption was invoked under (a)(4) on the basis of a single physician's opinion. The Benefits Review Board did not find it necessary to review this determination because the invocation under section (a)(2) was held to be sufficient. Because we have held the ALJ's findings of fact inadequate to invoke the presumption under (a)(2) we must at least take note of the fact that the ALJ purported to invoke under (a)(4) as well. However, as we noted in Patton v. National Mines Corp., No. 85-3781 (6th Cir. Aug. 3, 1987), black lung law is in flux on precisely this question, i.e., whether a single physician's opinion is sufficient to invoke the presumption under section (a)(4). Therefore, in accord with Patton, the principle of deference requires us to remand for a determination of what Board policy will be.
 
 
 16
 This case is therefore remanded for further proceedings consistent with this opinion.